UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATSY RODGERS, ET AL., | No. 2:12-cv-0415 MCE AC |
| Plaintiffs, | |
| v. | ORDER |
| SUNRISE SENIOR LIVING MANAGEMENT, INC., | |
| Defendant. | |

On January 15, 2014, the court held a hearing on plaintiff's December 23, 2013 motion to compel. Marla Strain appeared for plaintiffs. Andrew Chivinski appeared for defendant. On review of the parties' Joint Statement re Discovery, the documents filed in support and opposition, and upon hearing the arguments of counsel, THE COURT FINDS AS FOLLOWS:

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On December 29, 2011, plaintiffs Patsy Rodgers, individually and as Successor in Interest to John Rodgers; Nancy Adams; Mary Langdon; and Steve Rodgers commenced this action in the Sacramento County Superior Court against defendant Sunrise Senior Living Management, Inc., bringing claims for elder abuse, intentional infliction of emotional distress, constructive fraud, and medical malpractice / wrongful death. Defendant removed the case to this court on February 16, 2012 based on diversity jurisdiction.

1

1    The factual basis of plaintiffs' claims is as follows: On June 17, 2011, decedent John Rodgers, then 82 and suffering from dementia, was admitted to defendant facility, Sunrise Senior Living, Inc. Compl. ¶¶ 9, 11.  Defendant was aware that John Rodgers was totally dependent on others for assistance with all of his daily care needs, including nutrition, fluids, hygiene, medication, security, safety and social contact, and accordingly placed him.  Id. ¶ 10.  Defendant promised that John Rodgers's room would be equipped with a Guardian Pendant or Wanderguard so he could call for assistance at night.

Upon his admission to defendant-facility, plaintiffs instructed defendant on John Rodgers's inability to use the bathroom on his own, his proclivity to try to use the bathroom on his own at night, his tendency to wander and suffer sundowning, and his need for a proper setup for his sleeping area, including an alert system for his use when he needed to use the bathroom at night.  Compl. ¶ 15.  Plaintiffs accuse defendant of failing to follow these instructions or provide John Rodgers with the promised Guardian Pendant or Wanderguard.  Id.

On June 25, 2011, John Rodgers suffered a fall at defendant-facility resulting in internal bleeding and was sent to Sutter Roseville Medical Center Emergency Department.  Compl. ¶ 19.  John Rodgers ultimately died of his injuries and the exacerbation of his condition on July 24, 2011.[1]  Id. ¶ 17.

## DISCOVERY DISPUTE

On August 29, 2013, plaintiffs deposed Joyce Perkins, defendant's Director of Sales.  Perkins Depo., ECF No. 23-2 at 40-44.  At this deposition, Ms. Perkins testified that in 2009 she attended a training course called Sunrise University where she was given materials that she keeps in her office.  She recalled the various subjects covered as including "the Sunrise philosophy,

---

[1] Plaintiffs add additional facts in the Joint Statement re Discovery Disagreement, including that when John Rodgers was admitted to Sunrise, he was assigned a level of care called "Reminiscence Plus Plus" in light of the level of attention he needed.  See Joint Statement at 6-7.  As for his fall, John Rodgers fell on June 25, 2011 after attempting to use the bathroom in the middle of the night.  He was taken to Sutter Hospital where he was treated for a large tear on his forearm.  Within hours of his return from Sutter Hospital, defendant's staff noticed blood clots in John Rodgers's stool.  John Rodgers was then taken back to Sutter Hospital via ambulance, where he was admitted for a GI bleed.  He never recovered from his injuries.  He bled internally and passed away on July 24, 2011.

Alzheimer's and dementia, maintenance, housekeeping, sales and marketing."

On September 4, 2013, plaintiffs served defendant with their Request for Production of Documents ("RPD"), Set Two. Strain Decl. ¶ 5, Ex. D. The requests at issue are Nos. 3-7, which seek documents relating to Sunrise's "Sunrise University" course materials, marketing and sales materials, and policies and procedures regarding the assessment of care level for residents at Sunrise of Rocklin:

> RPD No. 3: All Sunrise University Materials provided to Sunrise of Rocklin employee, Joyce Perkins, during her attendance at the five-day Sunrise University course, as testified to by Joyce Perkins in her August 29, 2013 deposition.
>
> RPD No. 4: Any and all DOCUMENTS referring or relating to YOUR "selling skills course" as identified by Joyce Perkins in her August 29, 2013 deposition.
>
> RPD No. 5: Any and all DOCUMENTS regarding or relating to YOUR "selling skills advanced course" as identified by Joyce Perkins in her August 29, 2013 deposition.
>
> RPD No. 6: Any and all team link marketing and sales materials relating or referring to Sunrise Senior Living available for use by employees of Sunrise of Rocklin from 2011 through and including the present.
>
> RPD No. 7: Any and all DOCUMENTS referring or relating to YOUR standards, policies, procedures, guidelines, and/or protocols in effect between 2011 and the present regarding the assessment of care level for residents in the Reminiscence program.

Following two extensions of time, Sunrise ultimately responded on November 4, 2013, objecting on the grounds that these requests are vague, ambiguous, overbroad, and unduly burdensome, seek documents that are protected by privilege and third party privacy rights, and are not reasonably calculated to lead to the discovery of admissible evidence. The parties have adequately met and conferred on these issues. This motion was filed on December 23, 2013.

### LEGAL STANDARDS

"Though a federal court in a diversity action is to apply the substantive law of the forum in which it sits, discovery, as a procedural matter, is governed in a federal court only by the Federal Rules of Civil Procedure and state discovery practices are irrelevant." American Ben.

3

1  Life Ins. Co. v. Ille, 87 F.R.D. 540, 542 (D.C. Okl. 1978) (citing 8 Wright & Miller, Federal
2  Practice and Procedure: Civil § 2005 (1970)).  See also Eureka Financial Corp v. Hartford Acc. &
3  Indem. Co., 136 F.R.D. 179, 182 (E.D. Cal. 1991); see Fed. R. Civ. P. 26(b)(5).
4         Under Federal Rule of Civil Procedure 26(b), "[U]nless otherwise limited by court order,
5  the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged
6  matter that is relevant to any party's claim or defense—including the existence, description,
7  nature, custody, condition, and location of any documents or other tangible things and the identity
8  and location of persons who know of any discoverable matter.[2]  For good cause, the court may
9  order discovery of any matter relevant to the subject matter involved in the action.  Relevant
10 information need not be admissible at the trial if the discovery appears reasonably calculated to
11 lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).
12        Under Rule 34(a), "any party may serve on any other party a request to produce and
13 permit the party making the request . . . to inspect and copy any designated documents . . . which
14 are in the possession, custody or control of the party upon whom the request is served." Fed. R.
15 Civ. P. 34(a)(1).  "[A] party need not have actual possession of documents to be deemed in
16 control of them." Clark v. Vega Wholesale Inc., 181 F.R.D. 470, 472 (D. Nev. 1998) (quoting
17 Estate of Young v. Holmes, 134 F.R.D. 291, 294 (D. Nev. 1991).  "A party that has a legal right
18 to obtain certain documents is deemed to have control of the documents." Clark, 81 F.R.D. at
19 472.  Under Rule 34(b), the party to whom the request is directed must respond in writing that
20 inspection and related activities will be permitted as requested, or state an objection to the
21 request, including the reasons.  Fed. R. Civ. P. 34(b)(2).  Also, "[a] party must produce
22 documents as they are kept in the usual course of business or must organize and label them to
23 correspond to the categories in the request." Fed. R. Civ. P. 34(b)(E)(i).
24        Pursuant to Rule 37(a), a party propounding discovery or taking a deposition may seek an
25 order compelling responses when an opposing party has failed to respond or has provided evasive
26 or incomplete responses.  Fed. R. Civ. P. 37(a)(3)(B).  "[A]n evasive or incomplete disclosure,

---

[2] "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action." Fed. R. Evid. 401.

4

1    answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P.
2    37(a)(4). "It is well established that a failure to object to discovery requests within the time
3    required constitutes a waiver of any objection." Richmark Corp. v. Timber Falling Consultants,
4    959 F.2d 1468, 1473 (9th Cir. 1992) (citing Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir.
5    1981)). The moving party bears the burden of demonstrating "actual and substantial prejudice"
6    from the denial of discovery. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002) (citations
7    omitted).

## DISCUSSION

9    Before turning to the arguments presented on the motion, the court notes that the parties
10   have resolved the substance of their dispute regarding RDP No. 7. According to the Joint
11   Statement, Sunrise has agreed to produce the documents sought in RPD No. 7 pursuant to a
12   stipulated confidentiality agreement and protective order. At hearing on the motion, counsel for
13   Sunrise confirmed this position. Although the specific terms of the protective order remain to be
14   finalized, defendant no longer objects to production. Therefore, the dispute as to RDP No. 7 is
15   now moot.
16   As to the remaining requests, defendant's argument is essentially that none of the
17   documents sought are relevant to the issue in this case, which, as defendant reads both the
18   complaint and plaintiffs' discovery responses, is whether or not John Rodgers should have been
19   given, could have been given and/or was promised a bed-alarm device in 2011. Defendant asserts
20   that plaintiffs have not shown how documents disbursed in 2009 (two years before John
21   Rodgers's death) to a Director of Sales who had a very limited role in the care of John Rodgers
22   would have any bearing on the issues in this case. Further, the scope of the requests are
23   overbroad, as the documents sought include clearly irrelevant materials, such as housekeeping,
24   marketing, or 'selling skills' materials. Moreover, plaintiffs have not shown that the documents
25   provided to Ms. Perkins were either still in use in 2011 and/or reviewed by other individuals who
26   were more directly involved in John Rodgers' care. Lastly, defendant argues that the Sunrise
27   University's 'selling skills' and team-link sales materials are internal training manuals that are
28   protected as trade secrets.

Plaintiffs counter as follows.  First, the requests are not vague, ambiguous, or overbroad since they seek those specific documents provided to Joyce Perkins at the 2009 Sunrise University course.  They also assert that the documents are relevant because they relate to how employees were educated and trained to care for residents, including John Rodgers.  Insofar as defendant is arguing that the documents are privileged, plaintiffs assert that defendant should have submitted a privilege log, which it did not.  In any event, plaintiffs are willing to protect any privacy interests of third parties and defendant's own trade secrets by entering into an appropriate protective order and allowing for certain redactions.

Defendants would impose a much tighter nexus requirement between the documents that plaintiffs seek and the issues in this case than is contemplated by the Federal Rules of Civil Procedure.  Generally, there is no requirement that the information sought directly relate to a particular issue in the case.  Rather, relevance encompasses any matter that "bears on" or could reasonably lead to a matter that could bear on, any issue that is or may be presented in the case.  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 354 (1978).  District courts have broad discretion to determine relevancy for discovery purposes.  See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  This case turns on the contention that defendant and its employees were negligent in their treatment and care of John Rodgers.  Clearly, documents relating to their training would bear upon this issue.

Moreover, plaintiffs are exploring the theory that Sunrise "promoted a business model where the sales/marketing team made whatever assurances, promises, and representations were necessary to secure an applicant's residency . . . " See Strain Add'l Supp. Decl., Ex. A, ECF No. 28-1 at 9:8-13.  Materials related to defendant's sales and marketing training would plainly be relevant to this theory, which bears on plaintiff's claims for constructive fraud and intentional infliction of emotional distress as well as the availability of punitive damages.  Accordingly, defendant's relevance objection is overruled.[3]  Defendant's objection based on vagueness and ambiguity are also overruled.

---

[3] At the hearing on the instant motion, plaintiffs withdrew their request as directed to housekeeping materials.

As to plaintiff's overbreadth argument concerning RPD No. 6, which asks for marketing and sales materials from 2011 through the present, the court agrees that this request is indeed overbroad, and plaintiffs have not demonstrated how materials dated after John Rodgers's death are relevant to this case. Accordingly, defendants need only produce those documents dated through 2011.

Plaintiffs also seeks sanctions pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) in the amount of $1,000 for expenses incurred in bringing the instant motion. Pursuant to Rule 37(a)(5)(A), if requested discovery is provided after a motion to compel is filed or if a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Payment of reasonable expenses and attorney's fees is not required if the failure to respond was "substantially justified" or other circumstances would make an award "unjust." A discovery response is "substantially justified" if it is a response to a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action. Flones v. Property & Cas. Ins. Co. of Hartford, 2013 WL 5408659 (D. Nev. 2013) (citations omitted). The burden is on the losing party to affirmatively demonstrate that its discovery conduct was substantially justified. See Adv. Comm. Notes to 1970 Amendment to former Fed. R. Civ. P. 37(a)(4). The court does not find any circumstances justifying an award of sanctions.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' December 23, 2013 motion to compel (ECF No. 23) is granted in part;
2. Within fourteen (14) days from the date of this order, defendant shall produce documents responsive to plaintiffs' Request for Production of Documents, Set Two, as set forth in this order and pursuant to a protective order[4]; and

////

////

---

[4] The court desires that the parties reach agreement on the terms of a protective order. If the parties cannot agree, they may submit a joint motion as to any disputed issues.

1        3.  Plaintiffs' request for sanctions is denied.

2    DATED: January 15, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE